No. 30,306.

Joe Skinner, *Appellant*, v. Charles W. Johnson, Receiver, and John Doane, Assistant Receiver, of the Commercial State Bank, *Appellees*.

(7 P. 2d 119.)

Opinion filed January 30, 1932.

C. M. Higley, of Cawker City, C. L. Kagey, Leon W. Lundblade and L. M. Kagey, all of Beloit, for the appellant.

N. C. Else, of Osborne, A. E. Crane and B. F. Messick, both of Topeka, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action to have a sum of money adjudged to be a trust fund and to be paid in full by the receiver of a failed

bank. The trial court made findings of fact and rendered judgment, allowing the claim as that of a common creditor. Plaintiff has appealed.

Plaintiff, a farmer, who resided near Cawker City, in Mitchell county, and a neighbor, one E. P. Burger, on February 27, 1930, had a joint public sale, at which property belonging to both of them was sold. By agreement between them, Burger arranged that the Commercial State Bank of Cawker City should clerk the sale, and it was so advertised on the sale bills. Plaintiff had not previously been a customer of that bank. The bank's cashier, Fred J. Buist, performed the work and looked after the business of clerking the sale. In the payment of the property sold at the sale checks were given to the clerk by the purchasers, which checks were drawn on various banks, and a few small notes were given, which the bank had agreed to buy. It appears that nothing was said by plaintiff or Burger to the bank, or its cashier, about how the proceeds of the sale should be handled by the bank. The bank, through its cashier, took the proceeds to the bank and cleared the checks in the ordinary course of business, opened an account in the bank under the name of "Skinner and Burger Sale," to which was credited the amount of the gross proceeds of the sale, and which was charged with items incident to the expense of the sale, such as for the services of the clerk and auctioneer, and expense of advertising, as they came in. Within the next week or two plaintiff called at the bank two or three times and made inquiries about the matter, and was told that all the expense items had not been presented. On March 11, 1930, the cashier of the bank, having figured up substantially the net amount due each of the persons who sold property at the sale, opened an account on the bank's books in the name of the plaintiff, to which was credited the sum of $1,099.51, and about that date the cashier gave to plaintiff an itemized statement of the total amount of the sale, the expenses, and his portion of the proceeds. This sum had not been paid to plaintiff at the time the bank failed, March 18.

The trial court found that the bank made the entries in its books and handled the proceeds of the sale as was its custom and in accordance with the ordinary method of conducting banking business, that the proceeds became a part of the general assets of the bank, and were used by it in paying its expenses and in conducting the business of the bank, and that none of it was shown to have passed into the hands of the receiver.

The court also found that at the time the money was shown by the books as having been deposited there was not enough money in the bank to pay the amount of the deposit had it been demanded, nor was there sufficient money on hand to pay plaintiff's claim at any time thereafter and before the bank closed. There is no evidence that any actual money was paid to the bank, or to its cashier, from the proceeds of the sale. The bank received a few notes. The names of the makers, and the amount of them, are not disclosed; neither is there any evidence that they passed into the hands of the receiver; nor does plaintiff seek to recover those specific notes. The other proceeds of the sale consisted of checks on various banks which the bank cleared through its ordinary business channels, and for which it got credit at its correspondent banks, and these credits had been exhausted, or substantially so, before the bank closed.

Before plaintiff could have the sum claimed adjudged a preferred claim and paid in full by the receiver from the assets of the bank which passed into his hands, it is essential, of course, that he establish, first, that the fund in question was a trust fund, as that term is used in this classification; and, second, that it passed into the hands of the receiver.

The legal questions involved in this case are controlled by the decision of *Schoen v. Johnson,* post, page 612, this day decided. Even if appellant's argument that the fund here in question constituted a trust fund should be conceded—which it is not—still the record is entirely lacking in evidence to sustain a finding that the fund passed into the hands of the receiver. Indeed, it was not specifically alleged in the petition in this case that the funds passed into the hands of the receiver. The receiver should not, of course, be required to pay over a fund which the evidence does not show he received.

The result is, the judgment of the court below must be affirmed. It is so ordered.